# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | |
|---|---|
| **STEWART RAY DUDLEY,** | } |
| **Appellant,** | } |
| v. | } Case No.: 2:19-cv-00519-RDP |
| **BUFFALO ROCK COMPANY, et al.,** | } |
| **Appellees.** | } |

## MEMORANDUM OPINION

This case is before the court on appeal from the United States Bankruptcy Court for the Northern District of Alabama's Memorandum Opinion and Order Sustaining the Objections of Buffalo Rock Company and James C. Lee, III to the Debtor's Claims of Exemptions Over Certain Life Insurance Policies. (Doc. # 1-3). This appeal has fully briefed, (Docs. # 5, 6, 7), and, because the appeal presents a narrow issue of law that has been adequately briefed by the parties, the court has determined oral argument is unnecessary to resolve this case.[1]

The appeal, which arises out of years of litigation and arbitration, requires this court to decide three issues: (1) Is a bankruptcy court's (purportedly incorrect) decision to conduct a contested proceeding instead of an adversarial proceeding grounds for reversal without an accompanying showing of harm? (2) Is a bankruptcy court required to provide a litigant with an evidentiary hearing when that litigant cannot point to a contested issue of fact or otherwise provide the court with a justification as to how the outcome of that hearing could affect any issue in the case? (3) In what instances is a bankruptcy court bound by an arbitration award entered in state

---

[1] The Appellees have stated that they believe oral argument is unnecessary. (Doc. # 6 at 5). Appellant has not taken a position on the issue.

court? For the following reasons, the court concludes that the Bankruptcy Court did not commit reversable error with regard to any of the questions presented. Accordingly, the Bankruptcy Court's decision is due to be affirmed.

I.      **Background and Proceedings**

While employed by Buffalo Rock Company,[2] Stewart Dudley ("Dudley" or "Debtor") entered into an agreement with his employer by which he received four American General Life Insurance Policies numbered U10107544L; U10107545L; U10107546L; U10107547L ("the Policies").[3] (Doc. # 6 at 16-17). But the Policies, which were recently valued in excess of $13 million, (Doc. # 1-3 at 3-4), came with strings attached. Namely, Dudley agreed to reimburse Buffalo Rock for all of the premiums paid on the Policies plus $10 million and, of particular relevance to this appeal, Dudley signed a Memorandum of Understanding giving Buffalo Rock some rights to the Policies — although the extent and nature of those rights remain in dispute. (Bank. Doc. # 1021 at 5).

The Policies and the accompanying Memorandum of Understanding later became the subject of binding arbitration. After conducting an evidentiary hearing, an arbitrator issued an interim award determining (1) Dudley was obligated to repay Buffalo Rock for the premiums associated with the Policies plus an additional $10 million (for a total liability of either

---

[2] For ease of reference, in this opinion "Buffalo Rock" refers to both Buffalo Rock Company and James C. Lee III.

[3] Among the insurance policies Dudley later claimed as exempt from the bankruptcy proceedings are two John Hancock Life Insurance Policies, numbered ORD 062156912 (or U10107537L) and ORD 007746031. (Doc. # 1-3 at 3-4). Dudley has listed the John Hancock Life Insurance Policies as having a value of $1.00 each, and it is unclear whether these policies were obtained by Dudley through his employment at Buffalo Rock. For purposes of this appeal, the court will treat the John Hancock Life Insurance Policies like the American General Life Insurance Policies, as the Bankruptcy Court has done.

$29,879,174.11 or $39,879,174.11 at the time of the arbitration),[4] and (2) the Policies should be placed in an express trust for the benefit of Buffalo Rock. (Doc. # 6 at 4). In reaching these determinations, the arbitrator concluded that the Memorandum of Understanding, entered into between Dudley and Buffalo Rock, created an express trust in favor of Buffalo Rock Company. (Doc. # 6 at 4). Accordingly, the arbitrator also entered a preliminary injunction precluding Dudley from taking any action with respect to the Policies. As a result of that preliminary injunction, Dudley was barred from using the Policies as collateral for any loans, withdrawing any cash value associated with the Policies, or taking any other action that would reduce the value of the Policies. (Doc. # 6 at 4).

Following the entry of the interim arbitration award, on April 5, 2016, the Honorable Judge Robert S. Vance entered two judgments against Dudley in the cases of *Lee v. Dudley,* No. 01-CV-2011-900773 (Jefferson Cty. Ct. Ala.) and *Buffalo Rock Co. v. Dudley*, No. 01-CV-2011-900461 (Jefferson Cty. Ct. Ala.). Those judgments confirmed the interim arbitration award and, specific to this matter, confirmed Dudley was liable to repay Buffalo Rock in the amount of $29,879,147.11 from the proceeds of the policies. The judgments also confirmed that the Memorandum of Understanding created an express trust in favor of Buffalo Rock with regard to the Policies. (Doc. # 5-1 at 141-44).

A month after Judge Vance entered the judgments against Dudley in state court, Dudley filed for bankruptcy under Chapter 11 of 11 U.S.C. § 101. (Doc. # 5-1 at 3-107). Because of Dudley's Chapter 11 filing, an automatic stay was entered that halted all actions by Dudley's

---

[4] The parties to this appeal have not provided the court with a copy of the interim award, and the language quoted by the parties is unclear on the arbitrator's calculations. (*See* Doc. # 6 at 4-5) ("Dudley owes an obligation to repay Buffalo Rock $29,879,174.11, the premiums paid from the proceeds of the four AIG policies … plus $10 million."). Nonetheless, the amount of Dudley's obligation to Buffalo Rock is ultimately irrelevant to the issues raised in this appeal.

creditors to collect debts. A week after the bankruptcy petition was filed, Buffalo Rock filed a Motion for Relief from the Automatic Stay in Order to Complete Pending Arbitration and State Court Litigation Against Stewart Ray Dudley. (Bank. Doc. # 20). In that Motion, Buffalo Rock sought, among other things, an order lifting the stay to allow the arbitrator to enter a final award and resolve the two remaining issues in the arbitration (the amount of attorney's fees and costs due to Buffalo Rock and an award of damages to James C. Lee, III for the Debtor's failure to provide an accounting). (Bank. Doc. # 20). The Bankruptcy Court permitted the arbitrator to finalize the award, which the arbitrator entered on August 12, 2016. (Doc. # 5-1 at 125). The final award (together with the interim award, which is referred to by the court as the "Arbitration Awards") was filed in the state court proceedings on August 15, 2016, and entered as a judgment in those proceedings on September 19, 2016. (Doc. # 5-1 at 125).

But, back to the bankruptcy proceedings. During those proceedings, Dudley claimed the Policies were exempt from the bankruptcy estate under Alabama law, pursuant to 11 U.S.C. § 522(b)(3). (Doc. # 6 at 16). Buffalo Rock objected on the grounds that the Arbitration Awards (and subsequent entry in the state court proceedings) precluded the Bankruptcy Court from making any determination regarding the ownership of the Policies. (Bank. Doc. # 145). Several rounds of briefing on that question followed. (Doc. # 1-3 at 6-8). Dudley took the position that the Arbitration Awards were not a final decision that determined ownership of the Policies (and thus a decision that could give rise to res judicata) because the Arbitration Awards were the subject of a Rule 59 motion to reconsider and because he had reached a settlement with the Internal Revenue Service that -- to some degree -- was inconsistent with the final arbitration award. (Doc. # 1-3 at 7). In addition to briefing those issues, Dudley responded to Buffalo Rock's objection by requesting an

evidentiary proceeding so that he could present additional evidence regarding the ownership interest he held in the Policies. (Doc. # 5 at 4-5).

After the briefing concluded, the Bankruptcy Court concluded that no legally relevant facts were in dispute and that none of Dudley's arguments were relevant to a res judicata determination. (Bank. Doc. # 1028). The Bankruptcy Court then listed the undisputed facts and requested Dudley's counsel state on the record whether he believed any of those facts were in dispute. (Bank. Doc. # 1028). Dudley's counsel responded by stating "[w]e don't disagree to those facts" and by adding, however, that "as it relates to who owns these [P]olicies, there are other facts that could be introduced that would help this court make that decision." (Bank. Doc. # 1028). The Bankruptcy Court then directed Dudley's counsel to "share [the relevant and/or disputed facts] … now … because so far no one has presented anything … that represents any sort of dispute of fact." (Bank. Doc. # 1028). Dudley's counsel did not provide any such disputed or relevant fact, and the Bankruptcy Court issued a judgment on the pleadings and sustained Buffalo Rock's objection to the Debtor's exclusion of the Policies from the bankruptcy estate. (Bank. Doc. # 1028). Soon after, the Bankruptcy Court entered the Memorandum Opinion and Order Sustaining the Objections of Buffalo Rock Company and James C. Lee, III to the Debtor's Claims of Exemptions Over Certain Life Insurance Policies. (Doc. # 1-3). This timely appeal followed. (Doc. # 1).

**II.     Standard of Review**

A District Court reviews a Bankruptcy Court's factual findings under the clearly erroneous standard. *See In re Club Associates*, 951 F.2d 1223, 1228-29 (11th Cir. 1992). Thus, when a district court hears an appeal from a bankruptcy court, its job is not to make independent factual findings; rather, the task of fact finding is the purview of the bankruptcy court. *See* Fed. R. Bankr. P. 7052; *In re Sublett*, 895 F.2d 1381, 1384 (11th Cir. 1990). This court will overturn the Bankruptcy

Court's factual findings only if they are "clearly erroneous." *In re Sublett*, 895 F.2d at 1384. Of course, this court reviews a bankruptcy court's legal conclusions de novo. *In re Tennyson*, 611 F.3d 873, 875 (11th Cir. 2010) (citation omitted); *Consumer Portfolio Servs. v. Coleman*, 342 B.R. 817, 819 (N.D. Ala. 2006).

### III.    Analysis

The Debtor asserts the Bankruptcy Court erred by (1) not conducting an adversarial proceeding to determine ownership of the Policies, (2) not conducting an evidentiary hearing as requested by the Debtor, and (3) concluding the Bankruptcy Court was bound by the arbitration award. The court will address each argument in turn.

#### A.    Contested Versus Adversarial Proceedings

The Debtor first argues that the Bankruptcy Court erred by conducting a contested proceeding instead of an adversarial proceeding to resolve the ownership dispute over the Policies. (Doc. # 5 at 9-11). This argument can be resolved in favor of appellees on waiver grounds. Debtor never requested an adversarial proceeding before the Bankruptcy Court and never objected to the Bankruptcy's Court's decision to adjudicate ownership of the Policies through a contested proceeding. In fact, the first time Debtor raised the prospect of an adversarial proceeding was in his appellant brief before this court. (Doc. # 5). Such a delay constitutes waiver and is sufficient to resolve this issue in favor of Buffalo Rock.[5] *In re E-Z Serve Convenience Stores, Inc.*, 318 B.R. 631, 636 (M.D.N.C. 2004) (citing *In re Village Mobile Homes, Inc.,* 947 F.2d 1282, 1283 (5th Cir.

---

[5] Somewhat surprisingly, the Debtor asserts that "[t]o 'waive' the right to an adversary proceeding, the Debtor must be aware that the right was at issue." (Doc. # 7 at 5). The seeming implication of this assertion is that the Debtor did not waive his right to an adversarial proceeding because he was unaware of the provisions in the Bankruptcy Code dictating when adversarial proceedings are appropriate. The court is unconvinced by this argument. It is a party's responsibility (along with that party's counsel) to know the proper legal procedures and to object to any misapplication of those procedures by a court. It has often been said that ignorance of the law is not a defense to criminal prosecution. *See McFadden v. United States*, 576 U.S. 186, 192 (2015). Nor is it a defense to a party's failure to assert timely legal arguments.

1991)) ("A party may waive its right to protest the lack of an adversary proceeding."); *United Mine Workers of Am. 1974 Pension Plan & Trust v. Walter Energy, Inc. (In re Walter Energy, Inc.)*, 579 B.R. 603, 617 n.16 (N.D. Ala. 2016) (where appellants failed to raise objections in bankruptcy court, district court would not consider objections on appeal); *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1331 (11th Cir. 2004) (citing *Walker v. Jones*, 10 F.3d 1569, 1572 (11th Cir. 1994) (quoting *Depree v. Thomas*, 946 F.2d 784, 793 (11th Cir. 1991)) ("[A]n issue not raised in the district court and raised for the first time in an appeal will not be considered by this court."). But, even if the Debtor had not waived his request for an adversarial proceeding, he has failed to show the harm necessary to warrant reversal and remand.

Before addressing the Debtor's showing of harm, however, it is necessary to differentiate between contested and adversarial proceedings. Unlike a contested proceeding, which involves a request for relief in the context of a primary bankruptcy proceeding, an adversarial proceeding requires the commencement of a separate suit. Most objections to claims are resolved as contested matters but, under Federal Rule of Bankruptcy Procedure 7001, ten types of disputes require an adversarial proceeding. Relevant here, an adversarial proceeding is required if the proceeding "determine[s] the validity, priority, or extent of a lien or other interest in property" and is not a proceeding determining the amount of a secured or priority claim (under Rule 3012) or a certain type of proceeding involving the transfer of exempt property (under Rule 4003(d)). Having said that, in practice, the distinction between contested and adversarial proceedings is often inconsequential. *See In re Ballard*, 502 B.R. 311, 320 (Bankr. S.D. Ohio 2013) ("While the United States goes to great lengths to distinguish [contested and adversarial] proceedings, frequently the difference between [the two proceedings] in practice is much less."). Adversarial proceedings are governed by Part VII of the Bankruptcy Rules, which, in large part, incorporate the Federal Rules

7

of Civil Procedure. Contested matters are governed by Federal Rule of Bankruptcy Procedure 9014, which incorporates most of the Bankruptcy Rules governing adversarial proceedings (along with the Federal Rules of Civil Procedure as well). Given the often nonexistent differences between contested and adversarial proceedings, courts have commonly dismissed challenges to one proceeding or the other because harmful error is often difficult -- if not impossible -- to establish. *See In re Ballard*, 502 B.R. at 321 (citing *Tully Constr. Co. v. Cannonsburg Env't. Assocs., Ltd. (In re Cannonsburg Env't. Assocs., Ltd.)*, 72 F.3d 1260, 1264-65 (6th Cir. 1996); *Trust Corp. of Montana v. Patterson (In re Copper King Inn, Inc.)*, 918 F.2d 1404, 1406-07 (9th Cir. 1990)) ("Pursuit of a proceeding as a contested matter when, under the Bankruptcy Rules, it should have been pursued as an adversary proceeding is frequently found to be harmless error."); *In re Downey Reg'l Med. Ctr.-Hosp., Inc.*, 441 B.R. 120, 127 (B.A.P. 9th Cir. 2010) ("The record here indicates that, even if viewed as erroneous, the bankruptcy court's decision [to resolve a matter in a contested proceeding instead of in an adversarial proceeding] resulted in no harm to [appellant].").

So, given the line of cases determining that an erroneous decision to conduct a contested proceeding instead of an adversarial proceeding usually amounts to harmless error, what is the Debtor's argument for why he was harmed? Well, it is not entirely clear. For the most part, the Debtor does not argue that he has been harmed at all. His main argument is that the Bankruptcy Court "exceeded its authority by making determinations in a proceeding under Bankruptcy Rule 9014 about the Debtor's ownership interest in property — a determination expressly within the scope of Part VII of the Bankruptcy rules governing adversary proceedings." (Doc. # 5 at 9). But, a naked assertion that a bankruptcy court erred by conducting a contested proceeding without an

accompanying demonstration that the decision caused harm is, as noted above, insufficient to secure reversal and remand. *See In re Ballard*, 502 B.R. at 321.

Perhaps recognizing that reversal is only warranted upon a showing of harm, the Debtor does make some attempts at combining this argument with his next argument, that the Bankruptcy Court failed to conduct an evidentiary hearing. (Doc. # 7 at 4-6). However, at no point does the Debtor attempt to explain how the Bankruptcy Court's resolution of the ownership of the Policies through a contested proceeding was linked to that court's decision to not hold an evidentiary hearing. Because contested and adversarial proceedings have nearly identical mechanisms for discovery, courts have rejected similar arguments that a bankruptcy court's error in choosing one over the other prejudiced an appellant's pursuit of discovery. *See, e.g.*, *In re Cannonburg Env't. Assocs., Ltd.*, 72 F.3d at 1264-65 (rejecting appellant's argument that the bankruptcy court erred by conducting a contested proceeding on harmless error grounds because "the same discovery methods are available under the rules governing contested matters as for adversary proceedings").[6] If the Bankruptcy Court had conducted an adversarial proceeding to determine ownership of the Policies instead of a contested proceeding, it still would have been confronted with the same issue — should an evidentiary hearing be conducted when the moveant fails to point to any contested material facts that provide a rationale for that hearing? As such, if the Bankruptcy Court erred by conducting a contested proceeding, that error was harmless. Thus, it is unnecessary to determine

---

[6] In fact, the Debtor's briefing supports this conclusion. In asserting that the Bankruptcy Court was required to conduct an evidentiary hearing, the Debtor cites to only one Bankruptcy Rule — Bankruptcy Rule 9014(d). (Doc. # 5 at 15). Bankruptcy 9014(d), which applies to contested proceedings, requires "[t]estimony of witnesses with respect to disputed material factual issues [to] be taken in the same manner as testimony in an adversary proceeding." Logically, if the Bankruptcy Rules impose the same procedural safeguards on witness testimony with respect to disputed factual issues in contested and adversarial proceedings, the Debtor could not have been harmed (with regard to witness testimony that he sought to admit) by the Bankruptcy Court's decision to conduct a contested proceeding.

whether the Bankruptcy Court erred by determining ownership of the Policies in a contested proceeding.

### B. The Evidentiary Hearing

The Debtor next argues that the Bankruptcy Court committed reversible error when it declined to conduct an evidentiary hearing. The court disagrees.

The Eleventh Circuit and other courts of appeals review a district court's decision to grant or deny an evidentiary hearing for abuse of discretion. *Cano v. Baker*, 435 F.3d 1337, 1343 (11th Cir. 2006); *see also In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litigation*, 56 F.3d 295, 302 (1st Cir. 1995); *Pierce v. Administrator New Jersey State Prison*, 800 F. App'x 108, 111 (3d Cir. 2020); *United States v. Howell*, 383 F. App'x 782, 783 (10th Cir. 2010). Although the court has been unable to find any binding case law requiring it to apply an abuse of discretion standard when reviewing a bankruptcy court's decision to grant or deny a request for an evidentiary hearing, district courts throughout the Eleventh Circuit have determined an abuse of discretion standard is the appropriate standard of review. *See, e.g.*, *Deutsche Bank Nat'l Tr. Co. v. Jackson*, No. 9:15-CV-81506-RLR, 2016 WL 5390594, at *6 (S.D. Fla. Sept. 27, 2016) ("This Court reviews a bankruptcy court's decision not to conduct an evidentiary hearing for abuse of discretion."); *In re Grunau*, 376 B.R. 322, 329 (M.D. Fla. 2007). Other federal courts have done likewise. *See, e.g.*, *In re Gordon*, 577 B.R. 38, 49 (S.D.N.Y. 2017) (citation omitted) ("Bankruptcy courts have the discretion to decide an issue without holding an evidentiary hearing, and a district court can reverse such a decision only if it amounts to an abuse of discretion."); *Armistead v. Na-Mor Inc.*, 574 B.R. 398, 401 (D. Mass. 2017) (quoting *In re Garcia*, 532 B.R. 173, 182 (B.A.P. 1st Cir. 2015)) ("With regards to the evidentiary hearing, '[t]he bankruptcy court has the discretion to decide an issue without holding an evidentiary hearing,' and the denial of a request for such

10

hearing is reviewed for abuse of discretion."); *Zurich Am. Ins. Co. v. Int'l Fibercom, Inc. (In re Int'l Fibercom, Inc.)*, 503 F.3d 933, 939 (9th Cir. 2007) (reviewing a bankruptcy court's "decision whether to hold an evidentiary hearing … for an abuse of discretion" and stating that the district court's standard of review is the same). As such, the court finds an abuse of discretion standard is appropriate in reviewing whether the Bankruptcy Court committed reversible error by denying the Debtor's request for an evidentiary hearing.

The Bankruptcy Court denied the Debtor's request for an evidentiary hearing because, when asked to do so, the Debtor did not provide the Bankruptcy Court with any disputed issue related to a material fact. (Bank. Doc. # 1028). Although the Debtor referenced "facts that could be introduced that would help [the Bankruptcy Court determine ownership of the Policies]," the Debtor did not provide those disputed facts or demonstrate how those disputed facts could prove relevant to determining ownership of the Policies, despite being expressly directed to do so by the Bankruptcy Court. (Bank. Doc. # 1028). Because the Debtor did not (or could not) describe the evidence he sought to introduce or provide any explanation or rationale as to why an evidentiary hearing was necessary, the Bankruptcy Court did not abuse its discretion by denying the Debtor's request and issuing a ruling on the pleadings. *See In re Downey Reg'l Med. Ctr.-Hosp., Inc.*, 441 B.R. at 129 (determining district court did not err by declining to permit additional discovery because the appellant "has not identified any discoverable *fact* that would have changed the outcome of the court's ruling"); *In re Caviata Attached Homes, LLC*, 481 B.R. 34, 46 (B.A.P. 9th Cir. 2012) (citing *In re Int'l Fibercom, Inc.,* 503 F.3d at 939; *Murphy v. Schneider Nat'l, Inc.,* 362 F.3d 1133, 1139 (9th Cir. 2004)) ("We conclude the bankruptcy court had sufficient undisputed evidence before it to issue its ruling without any further evidentiary hearing and did not abuse its discretion in denying the request for an evidentiary hearing.").

In fact, scheduling an evidentiary hearing (and consequently delaying a ruling on Buffalo Rock's objection to the Debtor's attempt to exempt the Policies from the bankruptcy estate) without any justification as to why that evidentiary hearing was warranted would have been at odds with Bankruptcy Rule 1001, which states that the Bankruptcy Rules "shall be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every case and proceeding." And, the protracted nature of this bankruptcy litigation and the extensive briefing that had already occurred on the issue of ownership only further supports the Bankruptcy Court's decision to forego holding an evidentiary hearing in this instance.

After taking this appeal, the Debtor has attempted to offer some clarification of what evidence he would have introduced before the Bankruptcy Court. Specifically, the Debtor maintains that "a material ambiguity existed over the nature of the ownership interests of the [Policies]" because (he contends) Alabama law precludes an arbitrator from placing the Policies into an express trust (and, therefore, he argues that the Arbitration Awards and subsequent state judgments were in error). (Doc. # 5 at 12). But, this delayed clarification is unconvincing for at least two reasons. First, this court is tasked with reviewing the Bankruptcy Court's decision to not hold an evidentiary hearing under the abuse of discretion standard. In reviewing that decision for an abuse of discretion, this court must review the rationale (or lack thereof) presented to the Bankruptcy Court for holding such a hearing. And, because the Debtor did not inform the Bankruptcy Court that holding an evidentiary hearing would allow him to introduce facts relevant to how the Arbitration Awards should be construed, his after-the-fact clarification on the issue is not relevant. Second, the Debtor has still not provided any indication of exactly what sort of evidence he would seek to introduce at the evidentiary hearing that could have altered the

Bankruptcy Court's res judicata analysis. Whether Alabama law precludes the Policies from being placed into an express trust and whether for that reason the Arbitration Awards were erroneous are legal issues. And, the Debtor has still not pointed to any disputed issue of material fact on which these issues might turn or any evidence that could have been introduced related to these issues.[7] Simply asserting the arbitrator made a legal error does not provide any sort of showing that a disputed issue of material fact existed or that presentation of evidence could have assisted the Bankruptcy Court in resolving that disputed issue. Therefore, the Bankruptcy Court did not abuse its discretion by declining to hold an evidentiary hearing.

      **C.     The Arbitration Award and Res Judicata**

Finally, the Debtor argues the Bankruptcy Court committed reversible error when it determined it was bound by the Arbitration Awards. He offers a plethora of reasons for why the Bankruptcy Court erred. Less than four full pages of the Debtor's briefing are devoted to the argument that the Bankruptcy Court erred in its res judicata determination. That is, he contends that: (1) "multiple parties and entities" were implicated in the arbitration proceedings, (2) the arbitration proceedings did not resolve the merits of the ownership issue but only resolved the indebtedness of the Debtor, (3) the arbitration proceedings were not final because they are the subject of a Rule 59 motion to reconsider in state court, (4) the arbitration proceedings were not final because the state court judgment is stayed as a result of the Debtor's bankruptcy, (5) the state court proceedings involved causes of action other than the ownership of the Policies, and (6) the Arbitration Awards are contrary to Alabama law. (Doc. # 5 at 11-14). The Debtor's scattershot

---

[7] The procedural history of this case also casts doubt on whether there was discoverable, relevant evidence that the Debtor had not already obtained. The Debtor was a party to the arbitration proceedings and almost three years passed between the initial arbitration award and the Bankruptcy Court's decision to not hold an evidentiary hearing on the Policies. Thus, even if there was some relevant evidence related to the arbitration proceedings that the Debtor did not have access to, the Debtor had more than enough time to obtain it prior to the oral hearing in which the Bankruptcy Court declined to hold an evidentiary hearing.

approach, almost entirely devoid of legal analysis and citations, necessitates a truncated review.[8]

In the Eleventh Circuit, a party seeking to apply the doctrine of res judicata must show: "(1) the prior decision [was] rendered by a court of competent jurisdiction; (2) there [was] a final judgment on the merits; (3) both cases [ ] involve[d] the same parties or their privies; and (4) both cases [ ] involved the same causes of action." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1296 (11th Cir. 2001). The Debtor's arguments mostly are addressed to the second, third, and fourth elements.

The Debtor's first argument is difficult to discern. He seems to argue that the "multiple parties and entities" in the arbitration proceedings differed from the parties to the bankruptcy appeal and that this fact prevented the Bankruptcy Court from applying the doctrine of res judicata. But, this argument is without merit. For res judicata to apply, precedent requires "the parties in the instant case [to be] either parties or in privity with a party to the first suit." *McCulley v. Bank of America, N.A.*, 605 F. App'x 875, 878 (11th Cir. 2015). Whether there were parties to the first suit not involved in the subsequent suit is not relevant to the inquiry. *See Comer v. Murphy Oil USA, Inc.*, 839 F. Supp. 2d 849, 855 (S.D. Miss. 2012) (citing *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 n.8 (5th Cir. 1993)).

The Debtor's second argument -- that the arbitration proceedings did not resolve the merits of the ownership issue -- does not fare any better. The arbitrator determined not only that the

---

[8] Even with a truncated review, the court is concerned that it has spent more time and resources divining and evaluating the Debtor's arguments on res judicata than the Debtor spent on articulating those arguments. The court cautions the Debtor that "throwing the kitchen sink" delays resolution of a matter and wastes the resources of the court, the client, and opposing counsel. *See Howard v. Gramley*, 225 F.3d 784, 791 (7th Cir. 2000) (admonishing a "'kitchen sink' approach" to advancing issues on appeal). The court encourages the Debtor's counsel (and attorneys more generally) to elaborate on arguments that have potential merit and to forgo entirely arguments without merit. *See* Antonin Scalia & Bryan A. Garner, *Making Your Case: The Art of Persuading Judges* 22-23 ("The most important—the very most important—step you will take … before a trial court or an appellate court, is selecting the arguments that you'll advance."); Marcus Tullius Cicero, *De Inventione* 345 (H.M. Hubbell trans., Harvard Univ. Press 1949) (describing the selection of arguments as "the first and most important part of rhetoric").

Debtor owed a debt to Buffalo Rock but also that the arbitrator imposed an express trust on the Policies in favor of Buffalo Rock because of the Memorandum of Understanding. (Arbitration Award at 46, 47, 49). Thus, the Arbitration Awards resolved the issue of who owned the Policies.

Next, the Debtor asserts that the arbitration proceedings were not final because they are the subject of a pending Rule 59 motion and are currently stayed. Binding case law has rejected similar arguments. *Fid. Standard Life Ins. Co. v. First Nat. Bank & Tr. Co. of Vidalia, Georgia*, 510 F.2d 272, 273 (5th Cir. 1975) ("A case pending appeal is res judicata and entitled to full faith and credit unless and until reversed on appeal."), *cert. denied*, 423 U.S. 864 (1975);[9] *but see Freedom Plastics, Inc. v. Sparta Polymers, LLC*, 2013 WL 12290256, at *8 (N.D. Ga., 2013) ("[W]hile it appears that the Eleventh Circuit has not directly reached this issue in the context of a Rule 59(e) motion, other federal courts have recognized that a judgment can be final for res judicata purposes even though it has a Rule 59(e) (or similar post-judgment) motion pending."). For res judicata purposes, the finality requirement is met if a court of competent jurisdiction issues a final decision and that finality requirement remains met "unless and until reversed on appeal" or otherwise modified. *Fid. Standard Life Ins. Co.,* 510 F.2d at 273. Because the Debtor does not dispute that final judgment has been issued against him by courts of competent jurisdiction, this argument is also easily rejected.[10]

The Debtor next argues that res judicata is not implicated because the state court proceedings "included a host of issues on a broad waterfront of disputes" other than ownership of

---

[9] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981), the en banc Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down before October 1, 1981.

[10] Curiously, a review of the state court dockets show that the Debtor's Rule 59 motions were denied in January 2017, over two years before this appeal was filed. *See Lee v. Dudley.,* No. 01-CV-2011-900773 (Jefferson Cty. Ct. Ala. Jan. 17, 2017); *Buffalo Rock Co. v. Dudley*, No. 01-CV-2011-900461 (Jefferson Cty. Ct. Ala. Jan. 17, 2017). If that is in fact the case, then this argument also fails on mootness grounds.

15

the Policies. (Doc. # 5 at 8).[11] But, the pertinent inquiry is whether "the same cause of action" arose in both cases, *In re Piper Aircraft Corp.*, 244 F.3d at 1296, not whether other matters were also litigated. That element is met here. As stated above, the state cases (along with the arbitrator) determined ownership of the Policies. As such, whether other issues were implicated in those matters is irrelevant.

Lastly, the Debtor maintains that "[a] review of the state court holding makes clear that an express trust under Alabama law was not created [because] [t]here was no identified trustee, title to the life insurance assets did not pass, and there was no manifest intention to create a trust." (Doc. #5 at 14). Essentially, the Debtor's last arguments are an attempt to relitigate the final arbitration award and the state court proceedings. But, this is precisely the sort of relitigation that is barred under res judiciata.[12] If the Debtor wished to raise such arguments, he should have raised them before the arbitrator, in the state court proceedings, or before a court reviewing the state court proceedings. But, raising these contentions in this appeal is barred by the doctrine of res judicata; therefore, it would be improper for this court to entertain these arguments.

## IV. Conclusion

For all these reasons, the court concludes that the Bankruptcy Court did not commit any reversible error. Accordingly, the Memorandum Opinion and Order Sustaining the Objections of Buffalo Rock Company and James C. Lee, III to the Debtor's Claims of Exemptions Over Certain Life Insurance Policies, (Doc. # 1-3), is due to be affirmed. A separate order will be entered.

---

[11] The court finds it difficult to discern the differences between this argument and the Debtor's second argument, in part, because the Debtor devotes a total of six (relatively brief) sentences to both arguments.

[12] It is precisely to prevent this sort of relitigation that the principle of res judicata was created. *See Ragsdale v. Rubbermaid, Inc.*, 193 F.3d 1235, 1238 (11th Cir. 1999) (citations omitted) ("The purpose behind the doctrine of res judicata is that the 'full and fair opportunity to litigate protects [a party's] adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions'").

16

**DONE** and **ORDERED** this March 26, 2021.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE